# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANDREW BEVINS, JR.,
    Petitioner,

vs.

TIMOTHY BRUNSMAN, WARDEN,
    Respondent.

Civil Action No. 1:08-cv-520

Dlott, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a writ of habeas corpus pursuant

to 28 U.S.C. § 2254. The case is now before the Court upon the petition (Doc. 1), respondent's

return of writ, exhibits, and supplement (Docs. 9, 20, 23), and petitioner's traverse brief. (Doc. 28).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of

Appeals after petitioner's fourth trial:[1]

### *The State's Case*

{¶ 3} After midnight on November 8, 2000, Nina Gipson and her eight-year-old
daughter were asleep in Gipson's bed when Gipson was awakened by the creaking of
the stairs outside her bedroom door. Gipson jumped out of bed and saw a "shadow
peeping around the corner." So Gipson grabbed a glass from a dresser and lunged at
the person who had come up the steps.

{¶ 4} Gipson struck the intruder in the forehead, above his left eye, with the glass.
The man turned Gipson around and held her in a headlock and choked her. As
Gipson was screaming and struggling, her daughter tried to fight the man.

{¶ 5} The man continued to choke Gipson and to "fling [her] around." Her daughter
was yelling, "[G]et off my momma." The man told Gipson to stop struggling and to
have her daughter go into the bedroom, or he would kill Gipson. Gipson testified
that her daughter "finally went to the bedroom. Well, after I told her, I said, babe,
you have to listen and go and do what the man says or he going to kill mommy."

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

{¶ 6} Gipson repeatedly tried to turn on the lights, but the intruder kept turning the light switch off. Gipson grabbed a can of disinfectant spray and tried to spray the man in the face, but the man said, "[H]oney, you going to have to do better than that."

{¶ 7} The struggle carried Gipson and her assailant into her daughter's bedroom and into a closet where some clothing was hanging. When Gipson's daughter jumped on the man, he threw the little girl against a bedpost, where she hit her back before falling to the floor. Gipson then bit the man on the forearm.

{¶ 8} The man pulled Gipson back into the hallway, just outside her open bedroom door and in view of her daughter, who was sitting on Gipson's bed. As he choked Gipson, the man digitally penetrated her vagina. The man then pushed Gipson into her daughter's room and began to unbuckle his belt. Gipson bumped the man, and he slipped.

{¶ 9} Gipson ran out of the apartment, screaming. She ran to the home of Francine Jackson, a neighbor, and called the police.

{¶ 10} Gipson described her attacker as an African-American man who wore a white T-shirt, blue "work pants," and dark blue flip-flops with white writing and designs on them. She testified that she could not see the man's face because he had been holding her from behind.

{¶ 11} Gipson testified that "Ms. Bevins" and her children had moved into the adjoining apartment a few weeks before the attack. She had seen Andrew Bevins, but had never spoken to him or allowed him to enter her apartment. In contrast to later testimony by Bevins' son, Gipson said that Bevins had never carried laundry for her.

{¶ 12} Erica Renee Moore, another neighbor, testified that when she had heard Gipson's screams, she looked out her window. Within a few minutes, she saw Bevins walking swiftly to his car: "If he would have walked any faster, he would have been running." Moore said that Bevins was wearing a "workman's uniform" consisting of a light blue shirt and dark blue pants, and blue Adidas flip-flops "with white" on them. Moore saw Bevins drive off in a gray truck.

{¶ 13} At about 8:30 that morning, Moore saw Bevins return to his estranged wife's apartment, which adjoined Gipson's apartment. Moore noticed that Bevins was wearing the same clothing and shoes that she had seen earlier, but this time Bevins was also wearing a skull cap that covered his forehead.

{¶ 14} Ann Renee Steele, a sexual-assault nurse examiner at University Hospital,

testified that she had examined a distraught and tearful Gipson shortly after the attack. Steele described Gipson's injuries, which included abrasions on her face and neck, bruises on her arms, and cuts on her lip and under a toe. Gipson also had vaginal abrasions and redness that were consistent with forced digital penetration. Steele saw what appeared to be blood stains on Gipson's T-shirt, so she submitted the T-shirt to the coroner's laboratory for testing.

{¶ 15} Detective Steven Ventre testified that he had met Gipson at her apartment a week or so after the attack. In Gipson's daughter's bedroom closet, Ventre found a child's dress and pants that had what appeared to be blood on them. Ventre submitted the items to the coroner's laboratory.

{¶ 16} Testing of Gipson's T-shirt and of the child's dress and pants revealed human blood stains. Deoxyribonucleic Acid ("DNA") testing of the T-shirt and of the pants revealed Bevins' blood on both items. No DNA testing was conducted on the dress.

## *The Defense Case*

{¶ 17} Bevins presented the testimony of a Bevins family friend named Francine Jackson, who stated that, on the night of the attack, Gipson had called the police from her home, and that Gipson had pointed out a white van that she had seen driving away from the scene.

{¶ 18} Annette Bevins testified that she had been married to Bevins for 25 years, but that they were separated. She and their two children lived in the apartment next to Gipson's. She testified that on the evening of November 7, 2000, she, Bevins, and her sister-in-law had driven in Bevins' light gray pickup truck to her daughter's home in North Carolina. They had arrived there the following morning.

{¶ 19} Bevins' son testified that on November 8, 2000, which he remembered "plain as day, because [his] niece was born that day," he saw his father carry some bags or a bundle of clothes into Gipson's apartment. His father had a "busted up knuckle" from an incident that had occurred earlier that day. When his father came out of Gipson's apartment, his father's knuckle was bleeding.

{¶ 20} Bevins' daughter, Patricia Slaughter, testified that she was living in North Carolina and that her family had visited her on November 8, 2000.

{¶ 21} Bevins also called Cincinnati Police Officer Phillip Black to identify three photographs that he had taken of Bevins on November 15, 2000. Black said that he took the photographs because he had observed a scar over Bevins' left eye and some scars on his hand.

{¶ 22} Black also identified three photographs of another man, one of which showed that man standing by the side of a white van. The man had been stopped by a patrol officer the night of the attack as a result of the descriptions that had been broadcast about the attack. Black testified that the van driver had been eliminated as a suspect when Bevins' blood was identified on Gipson's clothing.

{¶ 23} William Hillard, a crime-scene investigator for the Cincinnati Police Division, testified that he had investigated the crime scene at Gipson's apartment on November 8, 2000. Hillard said that a fingerprint on the disinfectant spray can was not Bevins' fingerprint. He did not test the print to see if it was Gipson's.

{¶ 24} Hillard identified nine photographs of the scene that the prosecutor had submitted into evidence. He testified that 48 photographs, from two rolls of film, were taken of the scene, and that "more than likely [he] took the pictures." He said that he did not know where the photographs were, and that he probably would have turned the photographs over to the case investigator.

(Doc. 9, Exh. 34 at 2-6).

## State Court Proceedings[2]

On November 22, 2000, the Hamilton County Ohio grand jury indicted Bevins on one count of aggravated burglary as defined in Ohio Revised Code § 2911.11(A)(1) and one count of rape as defined in Ohio Revised Code § 2907.02(A)(2). (Doc. 9, Exhibit 1; Case No. B-0009175). Bevins pled not guilty. (Doc. 9, Exhibit 2).

In December of 2000, the grand jury also charged Bevins with one count of escape, as defined by Ohio Revised Code § 2921.34(A), stemming from his attempt to flee during his arraignment on the aggravated-burglary and rape charges. (Doc. 9, Exhibit 3; Case No. B-0009380). Bevins pled not guilty by reason of insanity. (Doc. 9, Exhibit 4). The trial court consolidated the two cases. (Doc. 9, Exhibit 14 at 2).

On March 15, 2001, Bevins filed a motion to dismiss based on the violation of his right to a

---

[2]The procedural history as set forth by respondent (Doc. 9 at 2-7) is not disputed by petitioner (Doc. 28 at 2) and is repeated herein.

4

speedy trial which the trial court denied. (Doc. 9, Exhibits 5, 6; Case No. B0009175). After

discharging two attorneys, Bevins waived his right to counsel and represented himself with the

assistance of an attorney advisor. (*See* Doc. 9, Exhibit 14 at p. 2; *State v. Bevins*, 2002 Ohio App.

LEXIS 1299, at *2). A jury found Bevins guilty of all three counts. (Doc. 9, Exhibit 7).

On May 2, 2001, the trial court sentenced Bevins to consecutive prison terms of five years

for aggravated burglary, ten years for rape, and five years for escape. (Doc. 9, Exhibits 8, 9). The

Court also found Bevins to be a sexually oriented offender. (Doc. 9, Exhibit 8).

## Direct Appeal

In a timely appeal to the Ohio Court of Appeals, Bevins argued that he was denied his right

to a speedy trial, to take the deposition of an unavailable defense witness, and to a competency

hearing, also challenging his sentence as unsupported by the record and the trial court's admission

of evidence of his prior criminal record. (Doc. 9, Exhibits 10-12). On March 22, 2002, the Court of

Appeals reversed the judgment of the trial court, finding the trial court erred in failing to hold a

competency hearing. The appellate court remanded the case for such a hearing and retrial. (Doc. 9,

Exhibit 14, Case No. C-010316 and C010317). Finding the other assignments of error moot, the

appellate court also determined that the trial court did not deprive Bevins of his right to a speedy

trial nor err in denying his motion to depose witnesses. (*Id*. at 5-8).

Bevins, pro se, appealed to the Supreme Court of Ohio, arguing solely that he was deprived

of his right to a speedy trial. (Doc. 9, Exhibits 15, 16). On July 3, 2002, the Supreme Court of Ohio

denied leave to appeal. (Doc. 9, Exhibit 18, Case No. 2002-0586).

## Retrials

Based on a competency examination, ordered in April 2002, the trial court in July of that

5

same year, found Bevins competent to stand trial. (Doc. 9, Exhibits 19, 20). In March of 2003, the case was retried, only to end in a mistrial after the jury returned guilty verdicts. (Doc. 9, Exhibits 21, 22; see Exhibit 33 at 1; Exhibit 50 at 14, Case No. B-0009175). The case was tried yet a third time, in October 2003, ending in a hung jury. (Doc. 9, Exhibit 33 at 1; Exhibit 50 at 10, Case No. B-0009175).

## Fourth Trial

In February 2004, the trial court granted Bevins' motion to act as co-counsel at trial, but denied subsequent motions requesting self-representation. (Doc. 9, Exhibits 23, 24; Exhibit 50 at 6, Case No. B-0009175). The trial court again evaluated Bevins's competence, finding him to be competent to stand trial. (Doc. 9, Exhibit 25). On August 1, 2005, the case was presented to a jury. (Doc. 9, Exhibit 33 at 2; Exhibit 50 at 3, Case No. B-0009175). On August 5, 2005, the jury found Bevins guilty of aggravated burglary and rape. (Doc. 9, Exhibit 26).

On September 22, 2005, the trial court sentenced Bevins to ten consecutive years on each conviction. This sentence was to be served consecutive to sentences imposed for assault on a corrections officer and escape.[3] (Exhibit 28, Case No. B-0009175). The trial court adjudged Bevins a sexual predator. (*Id.*).

## Direct Appeal

Bevins, through new counsel, timely appealed to the First District Court of Appeals, raising the following assignments of error in his brief of May 17, 2006:

---

[3] Bevins was convicted of assault in the Hamilton County Common Pleas Court and was sentenced to twelve months incarceration. (Doc. 9, Exhibit 27, Case No. B-0411949). After retrial in September 2003, a jury convicted Bevins of escape. (Doc. 9, Exhibit 50 at 2; Case No. B0009380). On October 27, 2003, Bevins was sentenced in the Hamilton County Common Pleas Court to eight years for escape. (Doc. 9, Exhibit 29, Case No. B0009380). On direct review, the First District Court of Appeals affirmed the judgment of the trial court but modified his sentence to seven years. (Doc. 9, Exhibit 30, Case Nos. C040052).

6

1. Bevins was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United Sates Constitution by the improper comments of the assistant prosecutor during closing argument.

2. The trial court committed reversible error by violating Bevins' United States Constitution Sixth and Fourteenth Amendment rights to represent himself at trial when it denied his request for self representation.

3. The failure of the State to provide exculpatory evidence to Bevins and the trial court's denial of Bevins' motion for a new trial on Brady grounds violates Bevins' due process rights under the Fourteenth Amendment of the United States Constitution to his prejudice.

4. The evidence presented at trial was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain Bevins' conviction for aggravated burglary and rape.

5. The trial court erred to Bevins' prejudice by imposing unconstitutional sentence contrary to law when it sentenced him to maximum consecutive sentences.

6. Bevins requests the court to review the following issues he feels violated his due process right to a fair trial.

(Doc. 9, Exhibits 31, 32). The State filed a responsive brief. (Doc. 9, Exhibit 33). On December

29, 2006, the Court of Appeals vacated Bevins's sentence and remanded the case to the trial court

for resentencing pursuant to *State v. Foster*, 845 N.E.2d 470 (Ohio 2006). (Doc. 9, Exhibit 34, Case

No. C-050754). Overruling the remaining assignments of error, the Court of Appeals affirmed the

judgment of the trial court in other respects. (*Id.*).

On February 11, 2008, Bevins, pro se, moved for leave to file a delayed appeal to the

Supreme Court of Ohio (Doc. 9, Exhibits 35, 36). On May 26, 2008, the Supreme Court of Ohio

denied Bevins's motion. (Doc. 9, Exhibit 37, Case No. 2008-0335).

## Resentencing

In January of 2007, the trial court resentenced Bevins, as before, to ten years for aggravated

burglary and ten years for rape, to be served consecutive to each other and to the sentences imposed

for escape and assault. (Doc. 9, Exhibit 38, Case No. B0009175).

7

## Delayed Appeal

Nearly one year later, in December 2007, Bevins filed motions for delayed appeal in the First District Court of Appeals (Doc. 9, Exhibits 39-40), which the State opposed. (Doc. 9, Exhibit 41). On December 31, 2007, the Court of Appeals denied Bevins leave to appeal. (Doc. 9, Exhibits 42-43, Case Nos. C-070850 and C-070852).

Bevins, pro se, filed a timely notice of appeal to the Supreme Court of Ohio and raised the following proposition of law:

> 1. The trial court erred to the substantial prejudice of defendant appellant by rendering a resentence prohibited by the ex post facto provision of the United States Constitution.

(Doc. 9, Exhibits 44, 45). On May 7, 2008, the Supreme Court of Ohio denied Bevins leave to appeal. (Doc. 9, Exhibit 46, Case No.2008-0337).

## Post-Conviction Motion

On June 17, 2008, Bevins, pro se, filed a post-conviction petition in the state trial court, alleging that his indictment was constitutionally deficient. (Doc. 9, Exhibit 47). On September 26, 2008, the trial court denied Bevins' motion to vacate his sentence on the authority of *State v. Colon*, 893 N.E.2d 169 (Ohio 2008). (Doc. 9, Exhibit 48, Case No. B-0009175). Petitioner's subsequent appeals to the First District Court of Appeals and Ohio Supreme Court were denied. (Doc. 9, Exhibit 49; Doc. 21, Exhibits A-E; Doc. 27, Exhibit 1).[4]

## Federal Habeas Corpus

Bevins filed the instant Petition for Writ of Habeas Corpus, stamp filed on August 6, 2008, setting forth the following grounds for relief:

**GROUND ONE:** Speedy trial.

---

[4]Petitioner's defective indictment claim based on *Colon* is addressed in a separate Report and Recommendation issued by the Court.

Supporting Facts: In my first trial, the courts inadvertently ordered a competency evaluation under case number B0009175, however, I had requested a not guilty by reason of insanity evaluation under case number B0009380. Furthermore, the trial court should have separated the two cases and taken me to trial on case number B0009175.

**GROUND TWO**: Self-representation.

Supporting Facts: In my second, third and fourth trial I repeatedly requested to be allowed to represent myself, however, I was repeatedly denied the opportunity to do so.

**GROUND THREE:** Exculpatory evidence suppression.

Supporting Facts: In my first, second, third and fourth trial the prosecution failed to disclose to the defense two rolls of photos (44 in total) to the virgin crime scene.

**GROUND FOUR**: Sentencing issue.

Supporting Facts: The trial court incorrectly resentenced me under O.R.C. § 2929.14(C), furthermore, at the time I received my indictment the Ohio Supreme Court had not applied their severance application to O.R.C. § 2929.14(C) though (E)(4).

**GROUND FIVE**: Requested that the Appeals Court review the following issues:

1. The trial court violated my speedy trial rights under O.R.C. § 2941.401. My argument are contained in transcripts pages 1-6, 15-16, 176-185.

2. I received ineffective assistance of counsel by virtue of my disagreement with trial counsel over certain matters, including, and not limited to, my desire to introduce photos of injuries to the victim's genitalia, and counsel's failure to object to the prosecutor's leading questions. T.p. 172, 173, 174, 608, 609, 611, 771, 775, 777, 778, 780, 913 and 914.

3. The introduction of the State's evidence exhibits was inadmissible. T.p. 677-680.

4. The trial court erroneously admitted the court clinic report of Dr. Walters finding me competent when not evaluation of any kind was performed, when the other court clinic psychologists (Dr. Schmidtgoessling, and Dr. Baker) had opined that they could not ethically offer an opinion on my competency when they had not been able to perform any evaluation in that regard. T.p. 83-149.

5. There was not sufficient evidence for the court to adjudicate me a sexual predator. I am requesting that this Court do a complete review of my entire record to determine whether if any, may there be any constitutional errors I may have missed.

(Doc. 1, petition).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of a state court are entitled to a presumption

of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C.

§ 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those

decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin*

*v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110

Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated

on the merits in state court unless the adjudication either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> The phrases "contrary to" and "unreasonable application" have independent meanings:
> A federal habeas court may issue the writ under the 'contrary to' clause if the state
> court applies a rule different from the law set forth in . . . [Supreme Court] cases, or
> if it decides a case differently that we have done on a set of materially
> indistinguishable facts. The court may grant relief under the 'unreasonable
> application' clause if the state court correctly identifies the governing legal principle
> from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a
> particular case. The focus on the latter inquiry is whether the state court's
> application of clearly established federal law is objectively unreasonable . . . and an
> unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to

adjudicate the constitutional issues, the AEDPA deferential standard of review set forth in section 2254(d) is inapplicable. *See Wiggins v. Smith,* 539 U.S. 510, 534 (2003); *Towns v. Smith,* 395 F.3d 251, 257 (6th Cir. 2005); *see also Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003) ("Where as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). Under these circumstances, the constitutional claim is reviewed *de novo* and the Court considers "the totality of the evidence-'both that adduced at trial, *and the evidence adduced in the habeas proceeding[s].'" Wiggins,* 539 U.S. at 536 (emphasis in the original) (quoting *Williams v. Taylor,* 529 U.S. 362, 397-98 (2000)). *Accord Clinkscale,* 375 F.3d at 436.

## III. The Claims Alleged in Grounds One, Two, and Three of the Petition Relating to Petitioner's First, Second and Third Trials are Moot.

Ground One asserts that petitioner was denied his right to a speedy trial at his first trial. Grounds Two and Three alleged claims relating to his first, second, and third trials. Petitioner's habeas corpus claims based on alleged errors occurring at petitioner's first, second, and third trials should be denied as moot.

Petitioner is not incarcerated by virtue of any conviction resulting from his earlier trials, but from the judgment and conviction resulting from his fourth trial. Thus, the only state court judgment upon which petitioner may seek federal habeas corpus relief under 28 U.S.C. § 2254 is the judgment from his fourth and final trial–the judgment under which he is currently in custody. *See* 28 U.S.C. § 2254 ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court. . . ."). Where the state court grants a new trial to a criminal defendant after reversing an earlier conviction, any habeas corpus claims relating to the previous conviction are mooted by the retrial. *See Hook v. Berkemer,* 772 F.2d 907, 1985 WL 13604, at *1 (6th Cir. 1985) (unpublished) (citing *Lowe v. Duckworth,* 663 F.2d

11

42 (7th Cir. 1981); *Sloan v. State of Texas*, 469 F.2d 677 (5th Cir. 1972); *McLain v. Beto*, 458 F.2d

503 (5th Cir. 1972), *cert. denied*, 409 U.S. 979 (1972)). *See also Johnson v. Bell*, No. 3:08-0049,

2008 WL 1777415, at *1 (M.D. Tenn. April 16, 2008). Since petitioner is not "in custody" by

virtue of a conviction from his earlier trials, any claims relating to those trials are moot and should

be denied.

## IV. Petitioner's Claims Relating to his Fourth Trial Asserted in Grounds Two, Three and Five of the Petition are Procedurally Defaulted and Waived.

In recognition of the equal obligation of the state courts to protect the constitutional rights of

criminal defendants, and in order to prevent needless friction between the state and federal courts, a

state defendant with federal constitutional claims must first fairly present those claims to the state

courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. §

2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*,

404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's

highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526

U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757

F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he

may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v.*

*Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default, and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner

files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate

12

court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9; *see also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If a petitioner can no longer present his claims to a state court because of a procedural default, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the instant case, the Court finds that petitioner's claims relating to his fourth trial asserted in Grounds Two, Three and Five of the petition are procedurally defaulted and waived. Petitioner committed a procedural default when he failed to timely file a discretionary appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' denial of all but his sentencing claim on direct appeal after his fourth trial. Petitioner moved for leave to file a delayed appeal to the Supreme

14

Court of Ohio (Doc. 9, Exhibits 35, 36), but the motion was denied by the Supreme Court without explanation. (Doc. 9, Exhibit 37, Case No. 2008-0335). The Supreme Court of Ohio's denial of petitioner's motion for delayed appeal constitutes an adequate and independent state ground to preclude federal habeas corpus review. *Bonilla v. Hurley*, 370 F.3d 494, 497(6th Cir.) (per curiam), *cert. denied*, 543 U.S. 989 (2004).

In *Bonilla*, the Sixth Circuit held in an analogous case that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar federal habeas corpus review. 370 F.3d at 497. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla*, 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein).[5]

In the instant case, the Supreme Court of Ohio's decision is silent as to its reasons for denying petitioner's requested relief. (Doc. 9, Exhibit 37). Therefore, the Court must assume that the state court would have enforced any applicable procedural bar. *Bonilla*, 370 F.3d at 497 (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)). Accordingly, petitioner's claims related to his fourth trial are barred by procedural default unless petitioner establishes cause and prejudice for the default or that a miscarriage of justice excuses the default.

---

[5] The *Bonilla* Court found:

The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Bonilla*, 370 F.3d at 497.

Petitioner has failed to establish "cause" for his procedural default in the state courts. In his motion for leave to file a delayed appeal in the Supreme Court of Ohio, petitioner argued as "cause" for his delayed filing his limited access to the prison law library, his low IQ, insufficient funds to hire a private attorney, and the Ohio Public Defender's refusal to take his case. (Doc. 9, Exhibit 36, Bevins Affidavit). In *Bonilla*, the Sixth Circuit rejected a similar argument holding that the petitioner failed to establish cause for his procedural default despite alleging a sudden departure of his attorney, ignorance of legal and procedural requirements, pro se status, and limited access to the prison's law library. 370 F.3d at 498.; *see also Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995) (*pro se* status before the Supreme Court of Ohio is insufficient to establish cause to excuse procedural default). While the ineffective assistance of counsel under some circumstances may serve as cause to overcome a procedural default, *see Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004) (citing *Buell v. Mitchell*, 274 F.3d 337, 351-52 (6th Cir. 2001)), *cert. denied*, 546 U.S. 821 (2005), petitioner had no constitutional right to counsel on post-conviction relief. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001). Therefore, his inability to secure counsel for purposes of an appeal to the Ohio Supreme Court does not constitute cause to excuse his procedural default in this case. Finally, "a borderline mental impairment is not a factor external to a defense and, therefore, is not cause for excusing procedural default." *Johnson v. Wilson*, 187 Fed. Appx. 455, 458 (6th Cir. 2006) (citing *Hull v. Freeman*, 991 F.2d 86 (3d Cir. 1993); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003); *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988)). Therefore, petitioner's assertions do not establish cause for the default.

Since both cause and prejudice must be shown to excuse a procedural default, petitioner's failure to establish cause eliminates the need to consider prejudice. *Murray v. Carrier*, 477 U.S.

478, 494-95 (1986).

Nor has petitioner shown that if his claims are not considered on the merits a "fundamental miscarriage of justice" will occur, that is, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the crimes charged. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005). The actual innocence exception to the rule barring review of procedurally defaulted claims is premised on new, reliable evidence that was not available to the petitioner at trial. As explained by the Supreme Court:

> Without any new evidence of innocence, even the existence of a concededly
> meritorious constitutional violation is not in itself sufficient to establish a
> miscarriage of justice that would allow a habeas court to reach the merits of a barred
> claim. However, if a petitioner . . . presents evidence of innocence so strong that a
> court cannot have confidence in the outcome of the trial unless the court is also
> satisfied that the trial was free of nonharmless constitutional error, the petitioner
> should be allowed to pass through the gateway and argue the merits of his underlying
> claims.

*Schlup,* 513 U.S. at 316.

To establish a credible claim of actual innocence, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327-28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency.

17

*Bousley v. United States*, 523 U.S. 614, 623 (1998). *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup*, 513 U.S. at 321.

Petitioner fails to present any evidence of his actual innocence. His conclusory allegations that he will suffer a fundamental miscarriage of justice in the absence of the consideration of his constitutional claims cannot suffice to meet his burden of showing actual innocence. Therefore, petitioner has failed to establish a credible claim of actual innocence to permit federal court review of his procedurally defaulted claims.

Accordingly, the undersigned concludes that petitioner is not entitled to habeas relief based on the claims relating to his fourth trial asserted in Grounds Two, Three and Five of the petition because he has waived such claims of error due to his procedural default.

## V. Petitioner's Challenge to his Sexual Predator Classification in Ground Five of the Petition is not Cognizable in Habeas Corpus.

Ground Five of the petition also challenges petitioner's classification as a sexual predator. The trial court's classification of petitioner as a sexual predator does not result in him being "in custody" for purposes of federal habeas jurisdiction. The federal writ of habeas corpus is the appropriate remedy when a petitioner challenges "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release from that imprisonment."*Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In other words, the person who is in custody is challenging the conviction or sentence which resulted in the unconstitutional "custody." *Id*.

"[T]he classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas corpus."

18

*Thomas v. Morgan,* 109 F. Supp.2d 763, 767 (N.D. Ohio 2000). *See Leslie v. Randle,* 296 F.3d 518, 523 (6th Cir. 2002) (court lacked jurisdiction to grant relief on claim challenging petitioner's adjudication as a sexual predator under Ohio's civil sexual-predator registration statute because such classification is a "collateral consequence" of conviction and does not constitute a "severe and immediate restraint on his liberty sufficient to satisfy the 'in custody' prerequisite for federal habeas corpus review"). While petitioner is certainly "in custody" by virtue of his conviction, petitioner is not "in custody" by virtue of the fact that he is classified as a sexual predator who must register with authorities upon his release from prison. *Leslie,* 296 F.3d at 523. Petitioner's designation as a sexual predator is a collateral consequence of his conviction and does not satisfy the "in custody" requirement for federal habeas corpus relief. *Id.* Therefore, the Court lacks jurisdiction to consider petitioner's classification as a sexual predator. *See Booker v. Anderson,* No. 1:06cv1080, 2007 WL 1731282, at *6 and n.8 (N.D. Ohio June 14, 2007) (and numerous cases cited therein). *See also Goodballet v. Mack,* 266 F. Supp.2d 702, 708 (N.D. Ohio 2003). Ground Five, part five of the petition should be dismissed.

## VI. Ground Four of the Petition is Without Merit.

Ground Four of the petition asserts that petitioner's post-*Foster* prison sentence violates the Sixth Amendment and *Blakely v. Washington,* 542 U.S. 296 (2004), and his rights under the Due Process and Ex Post Facto Clauses. Each of these claims lacks merit.

In *Apprendi v. New Jersey,* 530 U.S. 466 (2000), the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court in *Blakely* reaffirmed *Apprendi's* holding, but clarified:

19

[T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. . . . In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

542 U.S. at 303-304 (internal citations omitted) (emphasis in the original). The *Blakely* Court determined that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment right to trial by jury under the United States Constitution. *Id.* at 303-305.

The reasoning of *Blakely* was extended to the United States Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing guidelines and thus any fact (other than a prior conviction) that increases a defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244. The *Booker* Court held that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based on facts not found by the jury beyond a reasonable doubt. *Id.* at 243-44. To remedy the Sixth Amendment violation, the Supreme Court severed two sections of the Sentencing Reform Act, effectively making the Sentencing Guidelines advisory. *See id.* at 244-264 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

On February 27, 2006, the Ohio Supreme Court in *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), held that certain provisions of Ohio's sentencing statute were unconstitutional under *Blakely* because they mandated additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender

20

penalty enhancements. *See id.* at 19-25, 845 N.E.2d at 490-94. Noting that the "overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender," and that the Ohio legislature "delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals," the Ohio Supreme Court determined as in *Booker* that the proper remedy was to sever the *Blakely*-offending portions of the statutes and grant trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *Id.* at 25-30, 845 N.E.2d at 494-98. Following the severance of the unconstitutional portions, the resulting Ohio sentencing statutes eliminated the presumptions in favor of minimum and concurrent sentences and allowed a court to sentence a defendant to any term within a crime's sentencing range or to consecutive sentences without making findings of fact.

In the instant case, petitioner argues that once the statutory authority for imposing a "maximum, non-minimum" sentence was severed from Ohio's sentencing statute by the Ohio Supreme Court in *Foster*, the trial court was without jurisdiction to impose a maximum, non-minimum sentence in his case. (Doc. 9, Exh. 45 at 2-4; Doc. 28 at 13).

Contrary to petitioner's contention, the severance remedy imposed by the *Foster* Court did not preclude the imposition of maximum, non-minimum sentences, but rather eliminated the need for any fact finding, judicial or otherwise, before such as sentence could be imposed. *See Foster*, 109 Ohio St.3d at 29, 845 N.E.2d at 498. Thus, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at 30, 845 N.E.2d at 498. When petitioner was re-sentenced in January 2007, the Ohio Supreme Court's decision in

21

*Foster* applied and the trial judge had full discretion to impose maximum, non-minimum prison terms without the necessity of fact finding. *Foster,* 109 Ohio St.3d at 25-30, 845 N.E.2d at 494-98; *see also Minor v. Wilson,* 213 Fed. Appx. 450, 453 n. 1 (6th Cir. 2007). Nor did the State have any burden "to prove *anything* before the court could select any sentence within the appropriate sentencing range." *Wentling v. Moore*, No. 3:07cv3089, 2008 WL 2778510, at *8 (N.D. Ohio July 14, 2008) (emphasis in the original). *See also Wright v. Lazaroff,* 643 F. Supp. 2d 971, 1002 (S.D. Ohio 2009). The trial judge's sentences on petitioner's aggravated burglary and rape offenses were within the statutory range, did not exceed the maximum sentence permitted by the range, and therefore did not violate *Blakely*.

Petitioner also asserts that the retroactive application of the *Foster* remedy to correct constitutional infirmities in Ohio's sentencing statutes constitutes a violation of the Constitution's Ex Post Facto and Due Process Clauses. This claim has been thoroughly discussed and uniformly rejected by this Court and other federal district and state courts in Ohio. *See Wright v. Lazaroff,* 643 F. Supp.2d 971, 1003-1005 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.) (and cases cited and quoted therein); *Smith v. Brunsman,* 626 F. Supp.2d 786, 793-795 (S.D. Ohio 2009) (Barrett, J.; Black, M.J.); *Kelley v. Brunsman,* 625 F. Supp.2d 586, 606-608 (S.D. Ohio 2009) (Spiegel, J.; Hogan, M.J.). [6] *See also Hooks v. Sheets,* No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio

---

[6] *See also Rettig v. Jefferys,* 557 F. Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject[ing] *ex post facto* challenges to the *Foster* decision"); *Smith v. Welch,* No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.; Perelman, M.J.) (unpublished); *Mason v. Brunsman,* No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe,* No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper,* No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson,* No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D. Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman,* No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar. 5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe,* No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D.

22

Oct. 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases cited therein).

The same reasoning contained in these decisions rejecting *ex post facto* challenges to *Foster* applies to the case-at-hand. *Foster* did not change the elements of the crimes of which petitioner was convicted and petitioner faced the same penalty ranges in the sentences for those offenses both before *Foster* (when he committed the offenses) and after *Foster*. *Cf. McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *11 (N.D. Ohio Feb. 1, 2008) (unpublished). Accordingly, the Constitution's Ex Post Facto and Due Process Clauses were not violated by the application of the *Foster* remedy in this case as asserted in Ground Four of the petition.

---

Ohio Feb. 27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein). *Cf. Turner v. Warden, Noble Corr. Inst.,* No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar. 31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Collins v. Warden, Chillicothe Corr. Inst.,* No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely,* his new sentence [under the *Booker* remedy adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

23

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims relating to petitioner's fourth trial asserted in Grounds Two, Three, and Five of the petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[7] A certificate of appealability should not issue with respect to the remaining grounds of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, **DENY** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  12/14/09

Timothy S. Hogan
United States Magistrate Judge

---

[7] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

24

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANDREW BEVINS, JR.,                       Civil Action No. 1:08-cv-520
      Petitioner,

                                         Dlott, J.
  vs.                                   Hogan, M.J.

TIMOTHY BRUNSMAN, WARDEN,
      Respondent

**NOTICE**

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's Report and Recommendation within **FOURTEEN (14) DAYS** of the filing date of this R&R. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within **FOURTEEN (14) DAYS** after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

25

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by ( *Printed Name* )    C. Date of Delivery

1. Article Addressed to:

Andrew Blevins # 411-997
Chillicothe Corr. Inst.
PO Box 5500
Chillicothe, OH 45601

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)    ☐ Yes

2. Article Number
(*Transfer from service label*)    7002 3150 0000 8388 4513

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

1: 08 cv 520 (Doc 30)